UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BYWATER,

        Plaintiff,                                    Hon. Ellen S. Carmody

v.

                                                     Case No. 1:13-cv1001

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## **OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. On December 2, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #10).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 17 years of age on his alleged disability onset date and 28 years of age on the date of the ALJ's decision. (Tr. 28, 122). He possesses a tenth grade education and has no past relevant work experience. (Tr. 41). Plaintiff applied for benefits on July 12, 2010, alleging that he had been disabled since January 1, 2000, due to deafness in one ear, vision impairment, and ADHD. (Tr. 122-25, 130). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 54-109). On September 1, 2011, Plaintiff appeared before ALJ Paul Jones with testimony presented by Plaintiff and a vocational expert. (Tr. 32-53). In a written decision dated September 9, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 21-28). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

In September 1997, Plaintiff participated in a school psychological evaluation conducted by Anne Meermans, Ph.D. (Tr. 191-95). The purpose of this examination was to "determine continuing eligibility for special education services as an emotionally impaired student."

3

(Tr. 191). Meermans observed that Plaintiff "has been in special ed since his second year in kindergarten." (Tr. 192). Meermans also noted that Plaintiff's performance on cognitive testing, administered three years prior, revealed that Plaintiff possessed a full scale IQ of 68-78. (Tr. 193). Plaintiff also participated in the Kaufman Test of Educational Achievement the results of which revealed that Plaintiff's reading and math skills were in the third to ninth percentile. (Tr. 193). With respect to Plaintiff's "social/emotional functioning," Meermans observed the following:

> Concerning Tim's social/emotional functioning, he continues to struggle with issues related to the physical and sexual issues he observed or endured during his early childhood. From reports in his file, it appears that he did not receive[] adequate nurturing or guidance, until being placed with his aunt. Tim was given two self-report measure[s], an anxiety scale and a depression scale. His score on the anxiety scale was not in the significant range, although one subscale was quite elevated. Students who score high on this scale either have a generalized inflated or inaccurate view of self, or may be experiencing emotional problems, peer difficulties, or problems at home or at school. On the depression scale, Tim's overall score was close to being clinically significant, meaning he is experiencing symptoms of depression more than most students his age. Tim's drawings had an unusual quality to them. Most looked as if they were drawn by someone younger. His house was an A-frame with several wi[n]dows placed in disarray. His tree had a few leaves only on one side. His person had no clothing details and an X through the left hand. Pupils were omitted. Clinical indications of these details and others suggest an individual who has grown up in a disorganized, unstable environment that is considered threatening. In addition, his drawings suggest that Tim may have self-absorbed tendencies and may not be that emotionally accessible. Complicating his behavior is his impulsive, full-speed ahead tendencies. Despite these factors and his tumultuous early years, he seems to be adjusting to high school reasonably well. He likes most of his teachers - his attendance could improve - but he seems to be putting forth adequate effort in getting most of his assignments done. For the most part, Tim's behavior does not appear to be malicious, only overreactive. There is a sad, somewhat introverted quality to at least some of his interactions, and this is not surprising considering all he has experienced. If given structure and encouragement, it is anticipated

he will respond appropriately.

(Tr. 194).

Dr. Meermans concluded that Plaintiff continued "to qualify for special education services as an emotionally impaired student." (Tr. 194). The doctor further noted that Plaintiff "needs preferential seating because he has both hearing and vision problems." (Tr. 194).

Plaintiff was incarcerated with the Michigan Department of Corrections for several years, approximately 2000 through 2010. (Tr. 196-377). MDOC treatment records are replete with instances in which Plaintiff had to be restrained or otherwise managed due to overt expressions of suicidal ideation. (Tr. 196-234). Plaintiff was also, for a time at least, treated with psychotropic medications. (Tr. 243).

On September 29, 2010, Plaintiff participated in a consultive examination conducted by John Jeter, LLP. (Tr. 379-83). Plaintiff reported that he was disabled due to ADHD. (Tr. 379). Plaintiff further noted, however, that he was not presently receiving treatment for this condition. (Tr. 379). The doctor observed that Plaintiff's "speech is clear and communication is good" and his "hearing and vision do not appear to provide any difficulty for this assessment." (Tr. 379). Plaintiff reported that he spends "6+ hours per day playing video games." (Tr. 380). Plaintiff reported that he "performs housekeeping" chores such as shoveling snow, cutting the grass, washing laundry, and shopping and completing errands. (Tr. 380). The results of a mental status examination were unremarkable and the examiner observed that "there is no impairment in the patient's ability to understand, recall and carry out simple directions." (Tr. 381-82). Jeter further observed that:

> This claimant is verbal, friendly and pleasant, responds to and creates humor, and smiles easily. There is no apparent mood disorder. Attention, focus and persistence are good. No signs noted for ADD

5

>  or ADHD.

(Tr. 382).

On October 19, 2010, Plaintiff participated in a consultive examination conducted by Dr. Thomas Keaveney. (Tr. 387-89). Plaintiff reported that "his main physical disability is related to problems with hearing loss and visual problems." (Tr. 387). With respect to Plaintiff's hearing and vision, the doctor reported the following:

> The patient did have an audiogram here. He does have fairly significant hearing loss in the left ear. His right ear is fairly well maintained although he does have some mild loss in the higher frequencies. He has 20/30 vision in the left eye with his glasses both distance and near acuity. He does not have much vision in the right eye.

(Tr. 389).

On May 4, 2011, Plaintiff began counseling with Community Mental Health. (Tr. 394-98). The results of an examination revealed the following:

> Timothy reported mood lability characterized by sudden shifts from euthymia to depressed mood, as well as [unknown] and anger outbursts without significant provocation, occurring three to four times per day. He also reported that he is being treated for attention deficit disorder. He does not present with nor is there a known history of manic symptoms. He is currently receiving psychopharmacological therapy. Premorbid symptoms are presumed to have been more severe. He has a history of two suicide attempts in approximately 2001 or 2002. He currently has fleeting suicidal ideation, but no plans or intent, and is able to redirect his thoughts when this does occur. He has never been psychiatrically hospitalized. He was incarcerated from 2000 to 2010 with convictions of criminal sexual conduct against a four year old female. He reportedly participated in mental health treatment while incarcerated. He had two other legal consequences as a juvenile. He has a childhood history of physical and sexual abuse. Intelligence appears below average. He has never been employed. Strengths are affable personality, recreational interests, some social supports, positive

> attitude towards treatment, medical insurance, accessing health care, receiving food assistance, housing provided by relative, and denied substance use or history.

(Tr. 397).

Plaintiff was diagnosed with major depressive disorder, recurrent, in partial remission. (Tr. 397). It was also observed that Plaintiff exhibited "below average" intelligence and less than age appropriate insight and judgment. (Tr. 396). Treatment notes indicate that Plaintiff continued to participate in counseling with Community Mental Health for at least the next several months. (Tr. 400-04).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff did not suffer from a severe impairment or combination of impairments. (Tr. 25-26). A claimant who does not have a "severe impairment" is considered "not disabled." 20 C.F.R. § 416.920(c). The ALJ concluded, therefore, that Plaintiff was not disabled as defined by the Social Security Act. The Court finds that the ALJ's conclusion that Plaintiff did not suffer from a severe impairment is not supported by substantial evidence.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work

situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); *see also*, *Despins v. Commissioner of Social Security*, 257 Fed. Appx. 923, 929 n.2 (6th Cir., Dec. 14, 2007).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)); *see also*, *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

Step two of the sequential disability process is considered a "de minimus hurdle" designed to subject to dismissal only those claims which are "totally groundless" from a medical standpoint. *Rogers*, 486 F.3d at 243 n.2; *Despins*, 257 Fed. Appx. at 929; *Higgs*, 880 F.2d at 860. As the Sixth Circuit has recognized, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Long v. Apfel*, 1 Fed. Appx. 326, 331 (6th Cir., Jan. 9, 2001) (quoting *Higgs*, 880 F.2d at 862).

The evidence discussed above reveals quite clearly that Plaintiff experiences cognitive limitation, hearing impairment, and vision difficulty. Specifically, the evidence reveals that Plaintiff possesses a full-scale IQ of less than 80, "significant" hearing loss in his left ear, and "does not have much vision in the right eye." It is not reasonable to conclude that these impairments impose only minimal impact on Plaintiff's ability to perform work activities. The Court, therefore, finds that the ALJ's determination that Plaintiff does not suffer from a severe impairment is not supported by

9

substantial evidence.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further factual findings, including but not necessarily limited to, an accurate assessment of the severe impairments from which Plaintiff suffers, an assessment of his residual functional capacity, and a determination as to whether Plaintiff is capable of performing substantial gainful activity despite his limitations.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.


Date:  September 3, 2014                            /s/ Ellen S. Carmody
                                                    ELLEN S. CARMODY
                                                    United States Magistrate Judge